Gail CASTILLO, by and through her conservator, Paul Castillo, Plaintiff–Appellant,

v.

CIGNA HEALTHCARE; Rose Vasquez, M.D., Julie Conroy; Guardian Rehabilitation Hospital; American Telephone and Telegraph, Defendants,

and

At&T Medical Expense Plan for Management Employees, Defendant–Appellee.

No. 00–15573.

DC No. CV 98–03868 VRW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 13, 2001.

Decided June 7, 2001.

Before REINHARDT, TASHIMA, and BERZON, Circuit Judges.

MEMORANDUM *

■ Gail Castillo ("Castillo") appeals from the district court's grant of summary judgment against her action brought under 29 U.S.C. § 1132(a)(1)(B) to recover benefits denied by Cigna Healthcare ("Cigna"), plan administrator for the AT&T Medical Expense Plan for Management Employees. Castillo also contends that the district court erred by denying discovery on several issues. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse the grant of summary judgment against Castillo but affirm the district court's discovery rulings.[1]

■ The parties are familiar with the tragic circumstances surrounding Castillo's severe injuries, her subsequent treatment, and the prior proceedings in this action, so we need not repeat them here. We review the district court's grant of summary judgment de novo. *Simkins v. NevadaCare, Inc.*, 229 F.3d 729, 733 (9th Cir.2000). In an action to recover benefits under ERISA, the decision of a plan administrator is reviewed de novo unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

1. Castillo also contends that the district court erred by remanding the matter back to the plan administrator for further consideration before making a summary judgment determination itself. Because Castillo did not raise this issue in her opening brief, however, we consider the argument waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir.1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

the plan. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir.1999) (en banc). When discretion is conferred unambiguously, the district court reviews the determination of the plan administrator only for an abuse of discretion. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1107 (9th Cir.2000). Here the terms of the Summary Plan Description ("SPD") provide that Cigna "shall have sole and complete discretionary authority to determine conclusively for all parties" all questions arising from administration and interpretation of the plan, including eligibility for benefits. This language is sufficient to vest discretion unambiguously with Cigna. *See id.* The district court granted summary judgment after concluding that Cigna did not abuse its discretion by denying all coverage for Castillo's treatment at Learning Services because that treatment fell within the "custodial care" exclusion to the plan. We disagree.

■ An administrator may abuse its discretion when it construes provisions of the plan in a way that conflicts with the plain language of the plan or relies on clearly erroneous findings of fact in making a benefit determination. *See Taft v. Equitable Life Assurance Soc'y*, 9 F.3d 1469, 1472–73 (9th Cir.1993). The plan at issue defines custodial care as "any service provided primarily for the convenience or comfort of the participant but does not directly treat an illness or injury. Care provided to a patient whose need for medical care has stabilized and whose current medical condition is not expected to significantly and objectively improve over a specified period of time is considered custodial care." Without exception, Castillo's treating physicians opined that the services Castillo received at Learning Services should not be considered custodial care. The members of her treatment team all agreed that she should be at Learning Services, not primarily for comfort or convenience, but because she required contin-

ued rehabilitation to acquire additional functional improvements. These opinions were confirmed by Castillo's case manager at the facility where she was treated before transferring to Learning Services and by the Regional Director of Operations and Clinical Evaluator for Learning Services.

This evidence indicates that the treatment at Learning Services should not have been entirely excluded as custodial care, which is explicitly defined in the SPD by reference to whether the patient's need for care has stabilized and whether significant and objective improvement may be expected. None of the evidence in the administrative record directly contradicts the unanimous opinion of Castillo's treating physicians that she should be at Learning Services, that the treatment there would not be merely custodial, and that she stands to make significant and objective functional improvement within a specified time period as a result of that treatment. Although the treatment provided her with assistance in daily living, rehabilitation for Castillo's brain injuries naturally included retraining in such basic life activities. The evidence suggests that the purpose of such treatment was improvement toward greater independence, not solely comfort or convenience. Denial of coverage for the treatment at Learning Services in its entirety on the basis of the custodial care exclusion in the SPD was an abuse of discretion. *Cf. Dvorak v. Metro. Life Ins. Co.*, 965 F.2d 606, 610 (8th Cir.1992) (determination that care was principally custodial was clearly erroneous where patient received assistance with basic living but required constant nursing attention); *Barnett v. Weinberger*, 818 F.2d 953, 969 (D.C.Cir.1987) ("To suggest that a victim of catastrophic illness or a severe accident is receiving 'custodial care' simply because the 'primary' portion of her attendants' time is spent providing for her elemental needs is patently misguided.").

■ Under the SPD, however, proposed treatment must be included as a covered service (not merely not listed as an excluded service). Castillo contends that her treatment at Learning Services should be covered because Learning Services is an "extended care facility" within the meaning of the plan and because her treatment qualifies as "rehabilitation therapy." Learning Services cannot be an extended care facility because there is no evidence that it has a professional nursing staff or that it operates under the supervision of a physician, as required by the terms of the SPD.

■ However, a substantial portion of Castillo's treatment at Learning Services should qualify as prescribed rehabilitation therapy under the plan. As the record discloses, Castillo received massive injuries, including to the head, and has undergone extensive and continuous treatment. At Learning Services, Castillo participated in a daily structured program to retrain her in basic physical and cognitive skills. As part of this program, she was evaluated by a non-staff physical therapist and a non-staff occupational therapist, both of whom set up programs of therapy for Castillo. These daily, supervised, rehabilitative services provided by the Learning Services staff should be covered.

The plan's "rehabilitation therapy" provision specifies that covered services include: "Physical therapy services that assist in the restoration of normal, necessary physical movement, after movement has been acutely impaired by ... injury." Further, these services were provided under "direct order of a physician" and "likely to result in clear and reasonable improvement ... within three months," as provided in the plan. Here, Castillo's daily services were provided under the direct instructions of, and following the established plans of, the two non-staff therapists who evaluated Castillo.[2]

■ The plan administrator, therefore, must honor that portion of Castillo's claim that falls within the definition of rehabilitation therapy in the plan. *Cf. Cathey v. Dow Chem. Co. Med. Care Program*, 907 F.2d 554, 561 (5th Cir.1990) (concluding that a "fiduciary is not free to reject, in total, claims where a portion of the nursing services is noncustodial and otherwise covered by the plan. Under the instrument's language, the fiduciary remains obligated to honor those *portions* of claims that represent noncustodial home nursing care and are medically prescribed."); *O'Connor v. Cent. Va. U.F.C.W.*, 945 F.2d 799, 802 (4th Cir.1991) (quoting *Cathey* ). Because the plan administrator made no findings concerning what portion of Castillo's treatment at Learning Services would be covered as rehabilitation therapy, we must remand for such a determination.[3]

■ Finally, the district court has wide discretion in controlling discovery

---

2. Although the plan states, in part, that "rehabilitation therapy refers to services provided by a physical therapist, speech therapist or occupational therapist," it gives no subsequent definition of who qualifies as such therapists and does not delineate the extent to which the therapist must personally perform the service, as opposed to directly supervising others who assist the therapist in carrying out the therapist's plans and instructions.

3. Castillo's alternative argument based on *Salley v. E.I. DuPont De Nemours & Co.*, 966 F.2d 1011 (5th Cir.1992), is without merit.

Unlike that case, an adequate facility for Castillo was in fact identified here–namely, Learning Services–hence Cigna was not responsible for in-patient benefits under the theory that the only other available option was one (*i.e.* returning home) that her physicians believed was unacceptable. Moreover, contrary to Castillo's assertions, coverage for treatment at Learning Services cannot be awarded on the basis of a "duty to mitigate" if the administrator had no responsibility to provide in-patient treatment under the terms of the plan. Lastly, although the "flexing" of benefits may be industry practice, Castillo has

and we review rulings limiting discovery for an abuse of discretion. *Blackburn v. United States,* 100 F.3d 1426, 1436 (9th Cir.1996). When reviewing the determination of a plan administrator under the deferential abuse of discretion standard, a district court is generally limited only to reviewing evidence in the administrative record before the administrator at the time of its decision. *See Taft,* 9 F.3d at 1471–72. For this reason, it was not an abuse of discretion for the district court to deny Castillo's requests for discovery for information regarding the administrator's determination from outside the administrative record. Although *Taft* would not preclude consideration of evidence from outside the record concerning a potential conflict of interest, *see, e.g., Tremain v. Bell Indus., Inc.,* 196 F.3d 970, 976–77 (9th Cir.1999), Castillo has presented no basis to believe that even an apparent conflict of interest existed. An apparent conflict of interest exists when an administrator has dual responsibility for both the funding and payment of claims. *See McDaniel,* 203 F.3d at 1108. AT&T, however, has authorized Cigna to administer claims under the plan on its behalf and to assume its fiduciary responsibilities with respect to those claims. Moreover, AT&T self-funds the plan and Cigna is only a third-party administrator. It was not an abuse of discretion to deny discovery regarding a potential conflict of interest.

For the foregoing reasons, we affirm the discovery decisions of the district court. We reverse the grant of summary judgment because the plan administrator abused its discretion in denying all cover-

age for Castillo's treatment at Learning Services under the custodial care exclusion. We must remand for a determination of what portion of Castillo's treatment is covered as rehabilitation therapy under the terms of the plan. Castillo shall recover her costs on appeal from Cigna.

AFFIRMED in part, REVERSED and REMANDED in part.

---

provided no authority to suggest that the plan administrator had any legal obligation to flex her benefits so as to provide coverage.

