**Greg MARTIN, Plaintiff,**

**v.**

**AETNA LIFE INSURANCE COMPANY, Federal Express Corporation Short Term Disability Plan, Federal Express Corporation Long Term Disability Plan, and Does 1–10, Inclusive, Defendants.**

**CV 15–7355–RSWL–FFMx**

United States District Court, C.D. California.

Signed 11/30/2016

---

Christian J. Garris, Law Offices of Christian J. Garris, Los Angeles, CA, for Plaintiff.

Joann K. Coston–Holloway, Federal Express Corporation, Memphis, TN, Sandra C. Isom, Federal Express Corporation, Legal Department, Irvine, CA, for Defendants.

## RULING AND ORDER Re: BENCH TRIAL

HONORABLE RONALD S.W. LEW, Senior U.S. District Judge

On November 15, 2016, the above matter commenced in a bench trial before this Court. Plaintiff Greg Martin ("Plaintiff") filed this Employee Retirement Income Security Act of 1974 ("ERISA") disability benefits action against Defendant Aetna Life Insurance Company ("Aetna"), Federal Express Corporation Short Term Disability Plan ("STD Plan"), and Federal Express Corporation Long Term Disability Plan ("LTD Plan") (collectively, "Defendants"),[1] after Aetna denied him short-term disability benefits under the STD Plan provided by his employer, Federal Express Corporation ("FedEx").

Having received, reviewed, and considered the evidence presented, as well as the Parties' arguments at trial, the Court makes the following ruling: **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Judgment be entered in favor of Defendants.

---

**1.** In this Order, the Court will refer to Aetna when discussing arguments raised by all Defendants, as Aetna was the defendant primari-

## I. FINDINGS OF FACT

Plaintiff worked for FedEx as a "Sr. Service Agent/Non–DOT." Admin. R. ("A.R.") at 0215, ECF No. 31. Some of his essential job duties and responsibilities were assisting customers, tracking packages, preparing reports, keying alphabetic and numeric information into keypads, and checking paperwork. Id. at 0215–16. Under the "knowledge, skills, and abilities" section, Plaintiff required an "ability to lift 75 lbs … ability to maneuver packages of any weight above 75 lbs … with appropriate equipment and or assistance from another person." Id. at 0216.

### A. STD and LTD Benefits Plans

FedEx established a group benefits plan to provide Plaintiff with benefits in the event of a short-term or long-term disability. Id. at 0343, 0543. The FedEx STD Plan is self-funded; FedEx pays benefits from its own funds, but retains an insurance company, Aetna, to administer claims for STD Plan benefits. Id. At 0344. Benefits are payable at the rate of 70% of basic weekly pay before disability, less any offset. Id. at 0417, 0418. The benefits are paid for up to 26 weeks that the employee remains disabled. Id.

The employee has the burden of establishing a disability. Id. at 0566. The STD Plan defines disability as an "Occupational Disability;" that is, a "medically-determinable physical impairment" that prevents the employee from performing the duties of his regular occupation. Id. at 0548. The disability should be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological, or psychological abnormalities which can be

ly responsible for the denial of Plaintiff's short-term disability benefits giving rise to the instant action.

observed apart from the individual's symptoms." Id. at 0545–46. Proof of disability is based on "significant objective findings like: medical exams, test results, X-ray results, and observation of anatomical, physiological, or psychological abnormalities." Id. at 0422. But "pain alone is not proof of disability." Id. Benefits are denied when the provided medical information fails to support the disability. Id. at 424.

Aetna has authority to "interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to matters properly brought before it ... including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan." Id. at 0501. In denying a claim for benefits, Aetna shall provide the claimant with written notice setting forth the specific reasons, refer to pertinent plan provisions supporting the denial, and describe necessary additional material to perfect the claim. Id. at 0500.

The FedEx LTD Plan pays benefits once STD benefits are exhausted. Id. at 0417. Benefits continue until the employee reaches age 65 or remains unable to perform occupational duties for 25 hours per week, whichever comes first. Id. The LTD Plan pays up to 60% of basic monthly earnings, less offsets for other sources of income. Id.

## B. Aetna Grants STD Plan Benefits for November 7, 2014 to February 14, 2015

On February 22, 2012, Plaintiff's primary care provider, Dr. Michael Thompson, assessed Plaintiff for right carpometacarpal ("CMC") instability, right thumb CMC pain, left IP joint pain, fifth metacarpophalangeal joint pain sprain, and left thumb IP joint arthritis. Id. at 0013. On March 16, 2012, Dr. Thompson performed various thumb and wrist surgery on Plain-

tiff. Id. at 0036. By November 16, 2012, Plaintiff still had left-handed multiple joint arthritis, and Dr. Thompson recommended he take six to eight weeks off of work and refrain from lifting more than five pounds or repetitively pinching, gripping, or grasping. Id. at 0123. On October 31, 2014, Plaintiff had his first full day of absence from work. Id. at 0177, 210.

Plaintiff received benefits under the STD Plan for the period of November 7, 2014 to February 14, 2015. Id. at 0004. He substantiated his claim with clinical documentation from Dr. Bruno Seeman, occupational medicine. Dr. Seeman discharged Plaintiff to return to work on October 30, 2014 with restrictions to not use his hands. Id. at 0180. On November 4, 2014, Dr. Seeman instructed Plaintiff to return to work with an added restriction of "no gripping and grasping," and provided an expected maximum medical improvement ("MMI") of December 31, 2014. Id. at 0184. Aetna approved the STD Plan benefits due to his "inability to perform heavy cores of his job ... due to work related wrist injuries." Id. at 0247.

## C. Aetna Denies STD Plan Benefits for February 15, 2015 to May 7, 2015

Plaintiff presented to Dr. Enass Rickards, hand surgeon, on January 22, 2015, complaining of bilateral hand pain, numbness, and weakness. Id. at 0194. A hand and wrist examination showed normal range of motion, strength, and sensations; the X-rays revealed a well-healed metacarpal trapezial fusion, but were otherwise negative. Id. at 0195. Dr. Rickards recommended an EMG nerve conduction study to rule out carpal tunnel syndrome, and recommended Plaintiff return to modified duties at work, with no lifting greater than three pounds, no repetitive keying, or typing more than three hours a day. Id. at 0195–96.

Plaintiff returned to Dr. Rickards on February 19, 2015, complaining of multiple joint pain and ligament tears. Id. at 0197. His EMG nerve conduction study was normal, and there was no change from his prior hand examination. Id. Dr. Rickards diagnosed Plaintiff with bilateral hand arthritis. Id. at 0197–98. He was able to work modified duty so long as a rheumatologist evaluated him to rule out polyarthropathy (a type of arthritis). Id.

On March 4, 2015, Dr. Michael Wheatley, an Aetna-retained physician, conducted a peer review of Plaintiff's medical records. He noted that Plaintiff self-reported pain in multiple joints, but the hand and wrist examination, X-ray, and nerve conduction test were all normal. Id. at 0200–01. Dr. Wheatley concluded that Plaintiff had not presented significant objective clinical documentation that he could not perform the essential duty of lifting up to 75 pounds at his job. Id.

Plaintiff submitted a claim for unpaid STD Plan benefits for the period beginning February 15, 2015, which Aetna denied on March 4, 2015. Id. at 0006. Aetna reviewed November 2014—February 2015 visits with his treating health care providers Dr. Seeman and Dr. Rickards, workers compensation documented notes, and Dr. Wheatley's report. Id. Plaintiff presented no "significant objective clinical findings revealing a functional impairment that would preclude [Plaintiff] from performing the essential job duties of [his] own occupation, which is of a heavy demand level[,] lifting up to 75 pounds." Id. Further, there were no abnormal findings from orthopedic, neurologic, or neuromuscular exams precluding work in a heavy demand occupation. Id. at 0006. Aetna reminded Plaintiff that pain, without significant objective findings, is not proof of disability. Id. at 0007.

### D. Plaintiff Visits His Treating Physicians

On March 16, 2015, Dr. David Daugherty saw Plaintiff. Plaintiff complained of bilateral hand pain with numbness, burning, and tingling aggravated by typing and lifting/carrying 75–150 pounds at work. Id. at 0149. Upon physical examination, he had full range of motion in his elbow, forearm, and wrist, except for the right thumb. Id. at 0151. He had no Tinel's sign at the ulnar nerve or the median nerve at the elbow or wrist. Id. Dr. Daugherty concluded that Plaintiff's hand osteoarthritis at the thumb CMC joint was related to overuse and repetitive occupational stress. Id. at 0152. Plaintiff had "[t]emporary partial disability from today until [the] next appointment," and Dr. Daugherty recommended limiting lifting to three pounds and no forceful gripping, grasping, pushing, or pulling with both hands. Id. at 0153.

During a follow-up visit on April 13, 2015, his physical exam was essentially unchanged. Id. at 0156. Dr. Daugherty recommended resection arthroplasty of the thumb CMC joint to treat the left thumb CMC joint arthrosis. Id. at 0157. He diagnosed Plaintiff with bilateral thumb CMC joint osteoarthritis, left thumb MP joint osteoarthritis, and bilateral hand dupuytren's contracture (not work-related). Id. at 0157. The same temporary partial disability work status was indicated. Id. at 0157.

On April 24, 2015, Dr. Martin Mendelssohn, orthopedic surgeon, performed a peer review of Plaintiff's claim for Aetna. Plaintiff continued to be symptomatic, and suffer IP joint pain, numbness and tingling in both hands. Id. at 0206. But Plaintiff's electrodiagnostic studies were negative, as were his Tinel's and Phalen's sign. Id. In spite of Plaintiff's subjective pain complaints, the clinical exams did not show "significant objective clinical documenta-

tion revealing a functional impairment that would preclude him from performing the essential duties of his heavy demand lifting job." Id. at 0206–07.

### E. Aetna Denies Plaintiff's Appeal

Plaintiff appealed Aetna's March 2015 denial. Aetna denied the appeal on May 27, 2015. Id. at 0208. Upon review, Aetna considered documentation from Plaintiff's visits to Dr. Thompson back in 2012, as well as the March and April 2015 visits with Dr. Daugherty. Aetna noted that Dr. Rickards's January 22, 2015 exam findings did not support the recommended work restrictions. Id. at 0002. Further, Aetna noted negative tests and studies in conflict with Plaintiff's complaints of bilateral hand pain, numbness, and burning. Id. Aetna concluded that there were no "significant objective findings" to substantiate Plaintiff's functional impairment that would impede him from performing his heavy job duties. Id.

## II. CONCLUSIONS OF LAW

Under Section 502 of ERISA, a beneficiary or plan participant may sue in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

### A. Standard of Review

Before deciding whether Plaintiff's STD Plan benefits were properly denied, the threshold issue is whether the de novo or abuse of discretion standard of review applies.

In ERISA actions, the Supreme Court has used two standards of review: the de novo standard and the abuse of discretion standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A presumption exists that an ERISA plan administrator's decision denying benefits will be reviewed under the de novo standard. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). However, the abuse of discretion standard may apply if the administrator can establish that the plan at issue contains a valid grant of discretion to the insurer. Id. at 963. "[T]he plan must unambiguously provide discretion to the administrator." Id.

Plaintiff argues that de novo review applies, as California Insurance Code § 10110.6 voids any language conferring "discretionary authority" in an ERISA policy.[2] This applies to any claims accruing after the statute's effective date, January 1, 2012.[3] Pl.'s Opening Br. 8:16–17. Section 10110.6(a) provides, in relevant part:

> If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority[4] to

---

2. The discretionary clause in the STD Plan that Plaintiff claims section 10110.6 voids is: "[t]he Claims Paying Administrator shall, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to matters properly brought before it … including, but not limited to, matters relating to the

eligibility of a claimant for benefits under the Plan." A.R. at 0501.

3. Aetna does not dispute that Plaintiff's claim accrued when benefits were denied in March 2015, well after January 1, 2012. Compare Pl.'s Opening Br. 8:27, with Defs.' Opening Trial Br. 12–13.

4. Section 10110.6(c) further defines "discretionary authority" as: "a policy provision that

the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.

By contrast, Aetna argues that the abuse of discretion standard should apply, because the STD Plan very clearly grants Aetna discretionary authority to interpret the Plan's provisions and eligibility matters. Defs.' Opening Trial Br. 13:3–6.

Plaintiff's argument is well-taken. District courts sitting in this circuit have overwhelmingly concluded that section 10110.6 voids any grant of discretionary authority in an insurance policy, thus requiring the court to apply the de novo standard. Hodjati v. Aetna Life Ins. Co., No. CV 13–05021 SVW, 2014 WL 7466977, at *12 (C.D. Cal. Dec. 29, 2014)(section 10110.6 voids a policy vesting Aetna with discretionary authority to determine benefits eligibility and construe the plan terms).[5] It would stand to reason that the Court should not hesitate to apply de novo review. Nevertheless, the issue of which standard of review to apply after passage of section 10110.6 is further complicated by ERISA preemption.

### 1. ERISA Preemption of California Insurance Code § 10110.6

In spite of section 10110.6's ability to void discretionary clauses like the one here, Aetna turns to ERISA's preemption jurisprudence for more nuanced arguments. Plaintiff avers that section 10110.6 is rescued from preemption under the "Savings Clause" in ERISA, 29 U.S.C. § 1144(b)(2)(A), which saves from preemption any state law which "regulates insurance, banking, or securities." Pl.'s Opening Br. 9:26–27. Aetna responds that the "Deemer Clause" in ERISA, 29 U.S.C. § 1144(b)(2)(B),[6] acts as an exception to the Savings Clause and prohibits state law from regulating self-funded plans, like the one here, as insurance companies. Defs.' Resp. Br. 4:17–18.

To be saved from preemption under the Savings Clause, a state law "(1) must be specifically directed towards entities engaged in insurance; and (2) must substantially affect the risk pooling arrangement between the insurer and the insured." Standard Ins. Co. v. Morrison, 584 F.3d 837, 842 (9th Cir. 2009). The

---

has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court."

5. See Snyder v. Unum Life Ins. Co. of Am., CV 13–07522 BRO (Rzx), 2014 WL 7734715, at *11 (C.D. Cal. Oct. 28, 2014); Gonda v. The Permanente Med. Grp. Inc., 10 F.Supp.3d 1091, 1093 (N.D. Cal. 2014) (group disability insurance policy discretionary clause voided by section 10110.6 and de novo standard thus applies); Felix v. Metro. Life Ins. Co., No. CV 14–3971–R, 2015 WL 3866760, at *4 (C.D. Cal. June 19, 2015); Curran v. United of Omaha Life Ins. Co., 38 F.Supp.3d 1184, 1191 (S.D. Cal. 2014); Pol-

nicky v. Liberty Life Assurance Co. of Boston, 999 F.Supp.2d 1144, 1150 (N.D. Cal. 2013); Jahn–Derian v. Metro. Life Ins. Co., CV 13–7221 FMO (SHx), 2015 WL 900717, at *5 (C.D. Cal. Mar. 3, 2015); Williby v. Aetna Life Ins. Co., 2:14–cv–04203 CBM(MRWx), 2015 WL 5145499, at *5 (C.D. Cal. Aug. 31, 2015).

6. Section 1144(b)(2)(B) provides: "[n]either an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."

Ninth Circuit has held that the "practice of disapproving discretionary clauses" is saved from preemption under the Savings Clause. Morrison, 584 F.3d at 845.

Plaintiff is correct that section 10110.6 is rescued under the Savings Clause two-part test, at least to the extent that it voids ERISA policy discretionary clauses. First, it is a state-mandated insurance policy provision specifically directed towards insurance entities. See Morrison, 584 F.3d at 842 ("[i]t is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies.") Second, section 10110.6 "substantially affect[s] the risk pooling arrangement between the insurer and the insured" created by a discretionary clause. Jahn–Derian, 2015 WL 900717, at *4. However, the narrower issue—of whether section 10110.6 voids a discretionary clause in a self-funded ERISA plan or is preempted by the Deemer Clause—is less clearly decided and thus complicates the Court's analysis.

In FMC Corp v. Holliday, 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court held that the Deemer Clause exempts self-funded ERISA plans from state laws that regulate insurance under the Saving Clause. In other words, although the Savings Clause salvages section 10110.6 from preemption, the Deemer Clause ultimately preempts section 10110.6 to the extent it tries to regulate a self-funded ERISA plan. "Self-funded ERISA plans are exempt from state regulation

insofar as that regulation "relate[s] to" the plans." Id. Indeed, many circuit courts and district courts have respected the FMC Corp. holding that ERISA preempts state laws regulating self-funded plans.[7]

In spite of FMC Corp.'s applicability, two district courts in this circuit have directly considered "whether the application of section 10110.6 to self-funded plans is preempted by ERISA." Accord Thomas v. Aetna Life Ins. Co., 2:15–cv–01112–JAM–KJN, 2016 WL 4368110, at *6 (E.D. Cal. Aug. 15, 2016). Both have concluded section 10110.6 is not preempted, and thus de novo review applies.

In Thomas, the court reviewed the same FedEx STD Plan at issue here, self-funded by FedEx and administered by Aetna. The court concluded that section 10110.6 applies to self-funded plans just as equally as it applies to insured plans. Id. at *7. The court primarily relied on the reasoning in Williby v. Aetna Life Ins. Co., 2:14–cv–04203 CBM(MRWx), 2015 WL 5145499 (C.D. Cal. Aug. 31, 2015), another court confronted with the same issue, and offered two reasons for its holding. First, the plain language of section 10110.6 applies to "contracts" like self-funded ERISA plans. Id. at *6. Second, the legislative history of section 10110.6 was largely concerned with regulating unnecessarily draconian discretionary clauses, even in self-funded plans. Id. at *6.

■ The Court finds that ERISA preempts section 10110.6 because section 10110.6 regulates FedEx's self-funded

---

7. See Greany v. W. Farm Bureau Life Ins. Co., 973 F.2d 812, 818 (9th Cir. 1992); Provident Life and Accident Ins. Co. v. Linthicum, 930 F.2d 14, 16 (8th Cir. 1991)("[FMC Corp.] held that ERISA applied to self-funded benefit plans and pre-empted application of a state anti-subrogation law"); see also Belshe v. Laborers Health & Welfare Trust Fund for N. Cal., 876 F.Supp. 216, 220 (N.D. Cal. 1994) (California Welfare & Institutions Code sec-

tion—that invalidated any provisions prohibiting subrogation by a beneficiary to Medi-Cal—was beyond the reach of the Savings Clause, as defendants' medical plan was self-funded); Hampton Indus. Inc. v. Sparrow, 981 F.2d 726, 727 (4th Cir. 1992) (North Carolina statute which limited medical provider recovery from injured person's settlement funds in self-funded health benefits plan was preempted under the Deemer Clause).

plan. Notwithstanding Thomas and Williby, the Ninth Circuit has yet to speak on this precise issue. Until then, the Court's decision today does not rise and fall with mere persuasive authority from two district courts in this circuit. And neither Williby nor Thomas provide a compelling reason to disagree with FMC Corp. In Williby, the court failed to acknowledge FMC Corp.'s applicability, focusing instead on the narrow issue of whether section 10110.6 applies to not just contracts and insurance policies, but also to ERISA "plan documents." 2015 WL 5145499, at *5. As to that specific issue, the court noted that no court has yet decided whether section 10110.6 applies to ERISA plan documents "in the context of self-funded plans." Here, unlike Williby, the Court is not deciding whether section 10110.6's language embraces ERISA plan documents, but rather is trying to reconcile the tension between section 10110.6 and a self-funded ERISA plan. See also Thomas, 2016 WL 4368110, at *4 (failing to discuss FMC Corp. but focusing instead on the fact that no district court has held that ERISA preempts section 10110.6).

Plaintiff's argument, that courts in this circuit consistently find that section 10110.6 voids any discretionary clause whatsoever, is overstated. See Orzechowski v. Boeing Co. Non–Union Long-Term Disability Plan, SACV 12–01905–CJC (RNBx), 2014 WL 979191, at *9 (C.D. Cal. Mar. 12, 2014) (abuse of discretion applies where there is a discretionary clause under both the plan and the Summary Plan Description allowing the administrator to determine plan benefits eligibility, and section 10110.6 voids policies, not benefits plan clauses). And in Constantino v. Aetna Life Ins. Co., SACV 12–0921–JGB (Anx), 2014 WL 5023222, at *4 (C.D. Cal. Oct. 8, 2014) the court applied abuse of discretion review to the same self-funded FedEx STD Plan because of its discretionary clause allowing Aetna to interpret the plan provisions and factual matters of eligibility, and because FedEx paid benefits while Aetna was the claims-paying administrator.

Here, the STD Plan unambiguously affords Aetna, the claims paying administrator, discretion to "interpret the Plan's provisions in its sole and exclusive discretion . . . including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan." A.R. at 0501; Abatie, 458 F.3d at 963. And even if the Court were to accept the argument that section 10110.6 somehow voids the discretionary clause, the summary of plan benefits clearly states that the STD Plan is self-funded. A.R. at 0344, 0417 ("[u]nder self-funded plans, FedEx pays benefits out of its own funds.")

Because the clause clearly grants discretion to Aetna, and only two non-binding cases have unconvincingly decided that section 10110.6 voids a self-funded plan's discretionary clause, the Court declines to deviate from FMC Corp. and finds that because ERISA preempts section 10110.6 under the Deemer Clause, section 10110.6 does not void the discretionary clause in the self-funded ERISA plan. Accordingly, the Court reviews the denial of Plaintiff's STD Plan benefits under the abuse of discretion standard.

## B. Denial of Plaintiff's Benefits under the STD Plan

■ The Court next applies the abuse of discretion standard to determine whether Aetna properly denied Plaintiff benefits under the STD Plan for the period of February 15, 2015 to May 7, 2015.

■ The abuse of discretion standard is treated analogously to the "arbitrary and capricious" standard, Snow v. Standard Ins. Co., 87 F.3d 327 (9th Cir. 1996),

overruled on other grounds by Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089–90 (9th Cir. 1999) (en banc). Under the abuse of discretion standard, the court will not disturb a plan administrator's decision if it is reasonable. See Barnett v. Kaiser Found. Health Plan, 32 F.3d 413, 416 (9th Cir. 1994). ERISA Plan administrators abuse their discretion if (1) they render decisions without any explanation; (2) construe provisions of a plan in a way that conflicts with the plain language of the plan; or (3) rely on clearly erroneous findings of fact. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1472–73 (9th Cir. 1994).

### 1. Conflict of Interest

■ Where the same entity funding an ERISA plan also evaluates claims under the plan, then the plan administrator has a "structural conflict of interest." Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009). If there is a potential structural conflict of interest, then the court must weigh it as an additional factor in the abuse-of-discretion calculus. Id. at 631.

This case presents no structural conflict of interest. Plaintiff has not raised this argument in any of his trial briefs. Moreover, Aetna is the claims paying administrator, while FedEx pays for the STD benefits, which are self-funded. A.R. at 0417, 0499. Castillo v. Cigna Healthcare, 11 Fed.Appx. 945, 950 (9th Cir. 2001) (no apparent structural conflict of interest where AT&T authorized Cigna to administer claims under the plan while AT&T self-funded the plan).

### 2. Whether Aetna Rendered its Decision Without Explanation

Aetna argues that it properly instructed Plaintiff of his failure to provide "significant objective findings" evidencing a functional impairment that would prevent him from doing his "own occupation." Defs.' Opening Trial Br. 14:13–14. Plaintiff argues that Aetna's mere writing a denial letter does not immunize it from liability. Pl's Reply Br. 2:6–8.

■ "If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial." Booton v. Lockheed Med. Benefits Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). In both the initial March 5 denial letter and the May 27 denial of appeal letter, Aetna did just that, citing plan provisions defining "occupational disability" and pointing to the lack of "significant objective findings" required to substantiate an occupational disability. A.R. at 0001–02, 0006–07. Indeed, Aetna thoroughly reviewed and summarized findings from Plaintiff's submitted medical documentation, advising him about the "significant objective findings" requirement; that is, tests or medical exams revealing a significant anatomical abnormality separate and apart from the individual's symptoms. Id. at 0545–46. For instance, Aetna explained that although Dr. Rickards placed Plaintiff on restrictions of "no lifting greater than 3 pounds bilaterally and no repetitive keying or typing," the "exam findings did not support the recommended restrictions" because the EMG and nerve conduction study were normal. Id; Cf. Kochenderfer v. Reliance Standard Life Ins. Co., 2009 WL 4722831, at *9 (S.D. Cal. Dec. 4, 2009) ("[a]lthough this letter may not stand at the pinnacle of clarity, its explanation of the policies and disability definitions, [and] description of plaintiff's condition . . . was sufficient.")

It takes an egregiously cursory denial letter to show the decision was rendered without explanation. Booton, 110 F.3d at 1464 (Aetna ignored Plaintiff's argument

that her non-injured back teeth required injury-related work, a "concept so straight-forward that anyone ... with a modicum of intelligence would have been bound to grasp it.") Here, unlike Booton, Aetna combed through the proffered medical records to see if Plaintiff's argument—that he could not lift over 75 pounds—held any water. 110 F.3d 1461, 1463 (9th Cir. 1997). Aetna pointed out various unremarkable findings and tests, like negative electro-diagnostic studies and lack of significant deficits in range of motion or muscle strength, and contrasted them with the STD Plan rule that "pain, without significant objective findings, is not proof of disability." A.R. at 0002. Finally, Aetna gave Plaintiff an extension to gather more evidence in support of his claim. Id. at 0161–62; but see Booton, 110 F.3d at 1464 (Aetna ignored physicians' statements that they had more information to substantiate plaintiff's claim, and did not request more documentation). Thus, Aetna did not render a decision without explanation in either its initial denial or denial of appeal letters.

### 3. Whether Aetna's Decision Conflicts with the Plain Language of the Plan

■ To determine whether the administrator reached a decision in a way that conflicts with the plain language of the plan, the court should not determine "whose interpretation of the plan ... is most persuasive, but whether the [administrator's] interpretation is unreasonable." Canseco v. Constr. Laborers Pension Trust for S. Cal., 93 F.3d 600, 606 (9th Cir. 1996).

Plaintiff focuses his attention on the "own occupation" standard. Plaintiff does not provide a specific definition of "own occupation," but the Court surmises that it is the "medically-determinable physical impairment or [m]ental [i]mpairment, to perform the duties of his regular occupation ..." A.R. at 0548. The plain language of the plan does not specify whether the duties of one's "own occupation" means that Plaintiff needed to show that he could not perform all, none, or some of his listed "essential job functions." While the "skills and abilities required" section of his job description mandates that Plaintiff be able to lift and maneuver packages of 75 pounds, this skill is not listed as an essential part of Plaintiff's job. Id. at 0215–16; cf. Pl.'s Opening Br. 2:2 ("benefits are due if the employee is unable to perform the *substantial and material* duties of his or her own occupation.") (emphasis added). And at the bench trial, counsel for Defendant emphasized that Plaintiff's job as a Senior Service Agent is typically a customer service job.

Regardless of whether the lifting 75 pounds requirement is a substantial and material part of Plaintiff's job, Aetna did not contradict the plain language of the "own occupation" standard because Aetna weighed Plaintiff's subjective complaints of multiple joint pains and a previous bilateral hand arthritis diagnosis against recent documentation of *normal* strength and sensation, none of which was a "medical impairment" that would preclude him from lifting up to 75 pounds. Jones v. Fed. Express Corp., 984 F.Supp.2d 1271, 1276 (M.D. Fla. 2013) (Plaintiff was not disabled under identical "occupational disability" definition in FedEx plan where the overall medical documentation lacked abnormalities and tests showed mild or minimal back pain).

Aetna also followed the STD Plan's language that "pain, without significant objective findings, is not proof of disability." A.R. at 0422; see id. at 0002 ("[plaintiff] reported bilateral hand pain with numbness, burning and tingling ... [but] [t]here was no evidence of any significant deficits of motion or muscle strength"); id. at 0006

("[plaintiff has] self-reported complaint of pain in multiple joints ... [but] [t]here was no documentation of any loss of muscle tone or atrophy.") Thus, Aetna's decision was not in conflict with the STD Plan's plain language.

### 4. Whether the Decision Relied on Clearly Erroneous Findings of Fact

■ A decision is "clearly erroneous" when the reviewing body is left with the "definite and firm conviction that a mistake has been committed." Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan, 410 F.3d 1173, 1179 (9th Cir. 2005).

#### a. *Plaintiff's Treating Physicians*

Plaintiff contends that Aetna ignored every one of his doctors' decisions to restrict Plaintiff to lifting below 75 pounds and their unanimous agreement that he could not work due to permanent thumb/wrist injuries. Pl.'s Opening Br. 12:4–7. "[P]lan administrators are not obliged to accord special deference to the opinions of treating physicians." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003). While a plan administrator abuses its discretion if it dismisses a treating physician's opinion as insufficient absent conflicting, reliable evidence, Farhat v. Hartford Life & Acc. Ins. Co., 439 F.Supp.2d 957, 973 (N.D. Cal. 2006), the court cannot impose a "discrete burden of explanation of evidence" on a plan administrator when they credit reliable evidence in conflict with a treating physician's evaluation. Black & Decker, 538 U.S. at 834, 123 S.Ct. 1965.

Aetna did not wholly ignore Plaintiff's treating physicians' medical findings. When Plaintiff saw Dr. Rickards on January 22, 2015, he stated that his bilateral hand pain and numbness had not improved. A.R. at 0194. But upon physical examination, Dr. Rickards noted no deformities, normal range of motion and wrist strength, and normal sensations. Id. at 0195. Plaintiff could return to modified work duties, with lifting no greater than three pounds, and no repetitive keying or typing for more than three hours per day. Id. At the February 19 follow-up visit, Dr. Rickards noted that he underwent an EMG nerve conduction study with normal results, and that he would be able to work modified duty with only the following restriction: a rheumatology consult to rule out polyarthropathy, a type of arthritis. Id. at 0198. Nothing was said about Plaintiff's definitive inability to stop working or other severe lifting restrictions.

This set of facts is markedly different from James v. AT & T West Disability Benefits Program, 41 F.Supp.3d 849, 874–75 (N.D. Cal. 2014), where at least two of the plaintiff's treating physicians stated that she would not be able to work again due to her chronic pain and depression, and the initial denial letter did not even acknowledge this critical evidence. In its May 27 letter upholding denial of Plaintiff's STD Plan benefits, Aetna dutifully recounted these visits, concluding that Plaintiff did not have a significant functional impairment impeding him from performing his job duties. A.R. at 0001–03. Unlike the treating physicians in James, Plaintiff's physicians permitted Plaintiff to return to work with adjusted modifications—these modified work duties did not conclusively show Plaintiff was disabled under the STD Plan terms.

Moreover, Aetna properly considered "reliable, conflicting" evidence, in the form of Dr. Wheatley's and Dr. Mendelssohn's peer reviews.[8] Dr. Wheatley noted that Dr.

---

8. The Court disagrees with Plaintiff that Dr. Mendelssohn was improperly biased. Plaintiff baldly asserts that Dr. Mendelssohn has used boilerplate language—that "[the] functional

Rickards' findings of normal hand strength, sensation, and range of motion, unremarkable X-rays, and normal nerve conduction tests were in conflict with Plaintiff's self-reported multiple joint pain. A.R. at 0200–01.[9] And Dr. Wheatley was not required to take Dr. Rickards' one sentence recommendation—that Plaintiff return to work and lift no more than three pounds—as conclusory evidence of his disability. See Jones, 984 F.Supp.2d at 1277 (no abuse of discretion where defendants' peer-review physician considered, but did not exclusively rely on treating physicians' findings that plaintiff required modified work restrictions). Dr. Wheatley properly viewed Dr. Rickards' findings as a whole, weighing Plaintiff's subjective complaints against the lack of objective tests substantiating Plaintiff's claims. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 880 (9th Cir. 2004) (claims administrator did not act arbitrarily in weighing conclusory statements from treating physicians against plan's doctors statements), overruled on other grounds by Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666 (9th Cir. 2011).

b. *Subjective vs. Objective Evidence of Disability*

Aetna's discounting of Plaintiff's subjective complaints of pain was similarly neither arbitrary nor capricious. Plaintiff's medical documentation is largely rife with contradictions between his self-reported pain and unremarkable objective findings. Compare A.R. at 0197 ("[plaintiff made]

complaints of multiple joint pains"), with id. ("nerve conduction test was normal"), and 0198 ("no swelling, normal range of motion, normal strength, and normal sensation"); compare A.R. at 0149 ("describes burning type pain . . . aggravated by work activities such as . . . carrying 75–150 pounds"), with id. at 0151 ("full range of motion of the elbow, forearm, wrist . . . he can make a full composite fist . . . ."). Taking these discrepancies as a whole, Aetna had substantial evidence that Plaintiff's condition was "likely not severe enough to prevent [him] from doing [his] work." Jordan, 370 F.3d at 880 (no abuse of discretion where subjective indications of pain were at odds with plaintiff's lack of acute distress, lack of proximal muscle weakness, and no observable atrophy from pain-induced disuse).

Finally, Plaintiff has not demonstrated why the Court should give extra weight to Plaintiff's subjective evidence of pain for his garden-variety wrist and thumb pain. James, 41 F.Supp.3d at 879 (emphasizing need to consider subjective evidence, as plaintiff complained of "chronic pain syndrome," a medical condition dependent on patient reports of pain for its diagnosis). In fact, concluding otherwise would put Aetna at odds with the plain language of the plan: "pain, without significant objective findings, is not proof of disability." A.R. at 0422.

Plaintiff repeatedly argues that Aetna ignored substantial evidence because his treating physicians resoundingly concluded

---

impairment cannot be substantiated—in at least six cases Plaintiff's Counsel has recently litigated in the Central District. Pl.'s Opening Br. 13:18–19. This argument is borne out of Plaintiff's insistence that Aetna place a premium on Plaintiff's subjective complaints of pain, which the Court has rejected. The Court cannot conclude, without more, that Aetna's repeated use of Dr. Mendelssohn is sufficient to show bias and an abuse of discretion.

9. These unremarkable tests fly in the face of Plaintiff's sweeping statement that he has "undergone several MRIs that confirmed his subjective complaints." Pl.'s Opening Br. 13:10. Notably, Plaintiff does not point to any part of the administrative record substantiating this bald assertion.

that he could not lift more than 75 pounds. This not only misstates the submitted medical record, but also conflates diagnosis with disability.[10] As Defendants noted at the bench trial, and the Ninth Circuit has stated: "[t]hat a person has a true medical diagnosis does not by itself establish disability." Jordan, 370 F.3d at 880. In Safavi, the plaintiff made a similar argument as here—that the defendant improperly took into account plaintiff's lack of objective evidence, and failed to rely on plaintiff's subjective reports of pain and her doctor's opinions of her disability. Safavi v. SBC Disability Income Plan, 493 F.Supp.2d 1107, 1118 (C.D. Cal. 2007). The court rejected this argument, reasoning that were the claims administrator to pin its reasoning on subjective pain reports, this would "shift the discretion from the plan administrator, as the plan requires, to [applicant's physicians] who depend for their diagnosis on the applicants's reports to them of pain." Id. (quoting Jordan, 370 F.3d at 878). Stated differently, subjective complaints of pain conveyed to a treating physician are inherently self-serving.

At bottom, Plaintiff asks Aetna, and now the Court, to wholly embrace a few remarks from his treating physicians that he could have modified work duties of lifting no more than three pounds. Had Aetna done so, it would have overlooked the discrepancy between Plaintiff's subjective complaints of pain and Plaintiff's inconsistent objective examinations, and the exact concern in Jordan would come home to roost: Aetna would have improperly rubber stamped Plaintiff's diagnosis without a clear understanding as to whether he was actually disabled.

Accordingly, Aetna did not abuse its discretion when it denied Plaintiff short-term disability benefits under the STD Plan for February 15, 2015 to May 7, 2015. Even if the Court applied the less deferential de novo standard of review, and proceeded to "evaluate whether the plan administrator correctly or incorrectly denied benefits," Abatie, 458 F.3d at 963, the end result would not change. A claimant has the burden of proving, by a preponderance of the evidence, that he or she is disabled under the terms of the plan. See Muniz v. Amec. Const. Mgmt., Inc., 623 F.3d 1290, 1294–95 (9th Cir. 2010).

Plaintiff failed to show that he had a medically determinable physical impairment preventing him from lifting packages over 75 pounds. See A.R. at 0548. From his November 4, 2014 visit to Dr. Seeman, shortly after Plaintiff left work, to his visit with Dr. Daugherty in April 2015, Plaintiff's medical records from his treating physicians have consistently demonstrated normal range of motion and normal studies as to his wrist, hand, and thumb capabilities. A.R. at 0182, 0195 ("there is 5/5 muscle strength [on the right wrist] . . . "range of motion is normal with all muscle tendon units functioning" . . . "[t]he patient has full range of motion of the elbow, forearm, wrist.")

Moreover, although Plaintiff's physicians stated that he required limited use of his wrists and hands and grasping, they nevertheless allowed him to return to work. And only one physician, Dr. Daugherty, outright said that Plaintiff required temporary partial disability work status. Id. at 0157. Coupling these medical records with

---

**10.** As Aetna indicates, Dr. Daugherty was Plaintiff's only treating physician to suggest that Plaintiff had a temporary partial disability and would need to limit lifting to three pounds. A.R. at 0157. But as mentioned above, this brief sentence from one of Plaintiff's treating physicians does not cut against the weight of evidence that Aetna and its reviewing physicians considered from Dr. Rickards, Dr. Seeman, and Dr. Thompson that fail to connect the dots between Plaintiff's diagnoses and a substantiated disability.

the STD Plan's requirements, that employee present "objective findings" and that "pain alone is not evidence of disability," the Court finds that Aetna correctly denied benefits.[11]

## D. Admissibility Issues

### 1. Dr. Thompson Report

■ Aetna objects to Plaintiff's use of "Exhibit 2," a letter from Dr. Thompson detailing Plaintiff's bilateral hand injuries on a June 15, 2015 visit [32–1], as it is outside the administrative record and was not submitted to Aetna within the appeal deadline. Defs.' Resp. Br. 13:25–14:9.

■ Under the abuse of discretion standard, a court's review is generally limited to "only the evidence that was before the plan administrator at the time of determination should be considered." Opeta v. Nw. Airlines Pension Plan for Contract Emps., 484 F.3d 1211, 1217 (9th Cir. 2007).

The Court declines to consider Dr. Thompson's report, as it is outside the administrative record. The result would be the same even under de novo review. Opeta, 484 F.3d at 1217 (on de novo review, the court must find "exceptional circumstances" to admit evidence outside the administrative record, like complex medical issues) (quoting Quesinberry v. Life Ins Co. of N. Am., 987 F.2d 1017, 1027 (4th Cir. 1993)). Not only has Plaintiff failed to set forth any exceptional circumstances

warranting admission, but also the report is not germane to whether Aetna properly denied benefits. The June 15, 2015 report was not before Aetna when it initially denied Plaintiff's short-term benefits claim in March 2015, or when it denied his appeal in May 2015. Montour, 588 F.3d at 632 (the court's review of Aetna's decision is limited to the administrative record Aetna had before it). Thus, the Court **SUSTAINS** Defendants' objection, and Exhibit 2 will not be admitted into evidence.

### 2. Turner Declaration

Plaintiff objects to the Declaration of Tamara K. Turner ("Turner Declaration"), "Exhibit 3," as it is "testimony through way of a declaration" as to the plan terms and applicable offsets not in the administrative record.[12] Pl.'s Objs. To Turner Decl. 1:22–23, ECF No. 38–1. The Turner Declaration quantifies benefits Plaintiff received under the STD Plan for November 7, 2014 to February 14, 2015 and benefits denied for February 15, 2015 to May 7, 2015, per the Manager of Human Resources in the Benefits Planning and Management Department. Turner Decl. ¶ 2.

Because Plaintiff was properly denied STD Plan benefits and thus not owed benefits from February 15, 2015 to May 7, 2015, quantification of related offsets and this objection is moot. See A.R. at 0417 ("STD benefits are [offset] by any amounts you receive ... from[ ] workers' compen-

---

11. The parties further disagree as to whether Plaintiff should receive LTD Plan benefits and offset amounts. Aetna did not abuse its discretion in its denial of STD Plan benefits, and thus denial of benefits from February 15, 2015 to May 7, 2015 was proper. Because LTD Plan benefits do not begin until STD Plan benefits are exhausted; that is, once Plaintiff receives all 26 weeks of STD Plan benefits, the Court need not proceed with determining how much LTD Plan benefits Plaintiff is owed. A.R. at 0417. Moreover, as discussed below, the Court need not reach the

issue of offset amounts, as Aetna properly denied benefits for the relevant time window. Id. at 0418 ("STD benefits are reduced by any amounts [Plaintiff] receive[s] or [is] entitled to receive.")

12. As noted by counsel for Defendants at this bench trial, specific offset amounts were not included in the administrative record, as this determination was outside Aetna's responsibilities.

sation [etc.]"). Accordingly, the Court **SUSTAINS** Plaintiff's Objection to the Declaration of Tamara K. Turner **as MOOT** [37–1], and Exhibit 3 will not be admitted into evidence.

### III. CONCLUSION

Plaintiff has failed to show that Aetna abused its discretion when it denied STD Plan benefits from February 15, 2015 to May 7, 2015. Therefore, it is **HEREBY ORDERED, ADJUDGED, AND DE-CREED** that judgment be entered in favor of Defendants.

**IT IS SO ORDERED.**